# UNITED STATES DISTRICT COURT

## FILED

for the

Eastern District of California

MAR 04 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| SUBJECT DEVICES identified in Attachment A ) | Case No. |
| to the Supporting Affidavit in Support of this ) | |
| Warrant ) | 2:19 - SW - 0164    AC |
| ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Minor |
| 18 U.S.C. § 2252(a) | Receipt of Material Involving the Sexual Exploitation of Minors |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO, CHP Investigator, Richard Washabaugh
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _3/4/19_

_____
*Judge's signature*

City and state:  Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

1

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

2      I, Richard Washabaugh, being duly sworn, depose and state as follows:

3

4      ## INTRODUCTION AND AGENT BACKGROUND

5      1.      I am a Task Force Officer ("TFO") with the United States Federal Bureau of

6  Investigations ("FBI") and have so been sworn since August of 2017. I am presently assigned to the to

7  the FBI's CY-1 Cyber Squad in Roseville, California. I am a law enforcement officer of the United

8  States within the meaning of Title 18, United States Code, Section 2510(7). I was trained as a police

9  officer at the California Highway Patrol (CHP) Academy in Sacramento, California, and I am currently

10 employed by the CHP where I am assigned to the Computer Crimes Investigation Unit (CCIU).

11     2.      I have completed numerous investigations concerning, among other things, possession of

12 child pornography, network intrusions, social engineering, theft and fraud, and I have prepared

13 numerous search warrants related to these crimes. Prior to my assignment with CCIU, I was assigned to

14 patrol in the Oakland CHP office. During my tenure at this assignment, I interviewed hundreds of

15 victims, witnesses, and suspects in connection with auto theft, shootings, criminal threats, assaults and

16 identity theft. This helped introduce me to the methodology and motivation involved in the commission

17 of these types of felony crimes. During my tenure there, I also prepared numerous search and arrest

18 warrants relating to the crimes that I have mentioned.

19     3.      Prior to my employment with the CHP, I earned a Bachelor of Arts in History from the

20 University of California, Davis. My initial training with the CHP included 27 weeks of instruction at the

21 CHP academy in West Sacramento. This training included traffic law enforcement, as well as other

22 related criminal activity, including fraud, rape, kidnapping, and assault. I graduated in October 2010

23 with a Basic Certificate from California's Commission on Peace Officer Standards and Training

24 (POST).

25     4.      During my career with the CHP, I have received numerous hours of investigator training

26 including field training, classroom instruction, methods on how to investigate crimes, interview and

27 interrogation methods, and preparing search warrants, which I have incorporated into many of the search

28 warrants I have written. I have also received 120 hours of investigator training that included 80 hours of

1  Criminal Investigations Core Course training from the Robert Presley Institute of Criminal
2  Investigations. This course included field training, academic instruction, criminal investigation
3  methodology, interview and interrogation methods, and instruction on preparing search warrants.
4  During my tenure with the CCIU, I have also received over 1,000 hours in specialized training in digital
5  forensics presented by Guidance Software, BlackLight Technologies and the California Department of
6  Justice, Advanced Training Center. This training involved the seizing, processing and searching of
7  digital evidence in a forensically sound manner across multiple operating systems. It also covered the
8  best practices involved in digital forensics and high technology investigations.

9      5.      I have additionally received training in the investigation of child pornography over Peer
10 to Peer (P2P) networks through the Internet Crimes Against Children Task Force (ICAC), of which I am
11 a member.

12                          **PURPOSE OF THE AFFIDAVIT**

13     6.      I make this Affidavit in support of an application for a search warrant for information
14 contained in multiple electronic devices (hereafter "Subject Devices"), seized, on authority from
15 California State search warrants, from Tariq MAJID's person, vehicle and residence and currently in
16 CHP custody at 4949 Broadway Suite F104 in Sacramento, California.

17     7.      As set forth in more detail below, Tariq MAJID was arrested on state charges of
18 Possession of Child Pornography, California Penal Code 311.11(a); Possessing over 600 images of
19 Child Pornography, California Penal Code 311.11(c)(1); and Production of Child Pornography,
20 California Penal Code 311.1(a), in or around November 2018. On January 2, 2019, a federal criminal
21 complaint issued, charging Majid with violations of Sexual Exploitation of a Minor (18 U.S.C.
22 § 2251(a)) and Receipt of Material Involving the Sexual Exploitation of Minors (18 U.S.C. § 2252(a)).
23 On January 10, 2019, a federal grand jury returned an indictment charging Majid with the same
24 offenses. *See* 2:19-cr-008-KJM.

25     8.      Based on the authority of the aforementioned state search warrants, the Subject Devices
26 were initially searched by members of the investigative team, and each revealed indicia or evidence
27 related to the federal offenses identified above.

28 ///

2

9. The Subject Devices to be searched are described in the following paragraphs and in Attachment A.

10. The information regarding the Subject Devices is as follows:

- Item 1 – Toshiba hard drive, S/N: 943BTNQPTYP3[1]
- Item 2 – Miscellaneous CD/DVDs located in case in cardboard box by the closet
- Item 3 – Western Digital Easy Store, S/N: WX41D370L4TH
- Item 4 – Hitachi hard drive, S/N: 1MG64LGD
- Item 5 – Western Digital My Passport hard drive, S/N: WXE1A1706YKU
- Item 6 – Emachine desktop computer, S/N: PTND5P2002220024773000
- Item 7 – Alienware Laptop computer
- Item 8 – Gray USB drive, PNY brand
- Item 9 – Gray USB drive, SanDisk Cruzer mini
- Item 10 – Gray USB drive, unknown make
- Item 11 – Blue USB drive, unknown make
- Item 12 – Black and red USB drive, Cruzer edge
- Item 13 – Black and white USB drive, SanDisk Cruzer
- Item 25 - A FUJIFILM Finepix JX310 digital camera with no battery or storage
- Item 26 - A silver USB drive with "Ecolab water softening 2007" which was plugged in to a digital photo viewer
- Item 29 - A Sony floppy disk
- Item 30 - A Panasonic Compact Video Cassette

11. As set forth herein, there is probable cause to believe that the Subject Devices contain evidence of, violations of 18 U.S.C. § 2252(a), Receipt/Distribution of Child Pornography, and 18 U.S.C. § 2251(a), Sexual Exploitation of Children.

12. The facts and conclusions in this affidavit are based on my personal knowledge gained from my participation in this investigation, my training and experience, and information gained from

---

[1] The devices are identified by "Item #" based on how they were marked and identified during the initial state searches of Majid's residence, vehicle, and person.

3

1  other law enforcement officers, and reports. Since this affidavit is being submitted for the limited
2  purpose of securing a search warrant, I have not included each and every fact known to me concerning
3  this investigation. I have only set forth the facts that I believe are necessary to establish probable cause
4  for the alleged violations and to believe that evidence of those violations are contained in the Subject
5  Devices. Unless otherwise indicated, where actions, conversations, and statements of others are related
6  herein, they are described in substance and in part, and not intended to reflect everything that may have
7  been related in verbatim fashion.

8                                  **TECHNICAL DEFINITIONS**

9        13.     The following definitions apply to this affidavit:

10       a.   The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of
11            eighteen years.

12       b.   The term "child pornography" is defined in 18 U.S.C. § 2256(8) as: "[A]ny visual depiction,
13            including any photograph, film, video, picture, or computer or computer-generated image or
14            picture, whether made or produced by electronic, mechanical, or other means, of sexually
15            explicit conduct, where – (A) the production of such visual depiction involves the use of a
16            minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image,
17            computer image, or computer-generated image that is, or is indistinguishable from, that of a
18            minor engaging in sexually explicit conduct; or (C) such visual depiction has been created,
19            adapted, or modified to appear that an identifiable minor is engaging in sexually explicit
20            conduct.

21       c.   The term "sexually explicit conduct" is defined in 18 U.S.C. §  2256(2)(a) as "actual or
22            simulated – (i) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or
23            oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii)
24            masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or
25            pubic area of any person."

26  ///
27  ///
28  ///

                                            4

**THE INTERNET AND TECHNICAL TERMS RELATING TO COMPUTERS**

14.     As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet (through a university, an employer, or a commercial service such as an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit web sites and make purchases.

   a. **Internet Service Providers (ISPs) and the Storage of ISP Records**: Internet Service Providers (ISP) are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her

5

1    account name and personal password. ISPs maintain records (ISP records) pertaining to their

2    subscribers (regardless of whether those subscribers are individuals or entities). These

3    records may include account application information, subscriber and billing information,

4    account access information (often times in the form of log files), e-mail communications,

5    information concerning content uploaded and/or stored on or via the ISP's servers, and other

6    information, which may be stored both in computer data format and in written or printed

7    record format. ISPs reserve and/or maintain computer disk storage space on their computer

8    system for their subscribers' use. This service by ISPs allows for both temporary and long-

9    term storage of electronic communications and many other types of electronic data and files.

10   Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an

11   ISP incident to the transmission of that e-mail to the intended recipient, usually within an

12   area known as the home directory. Such temporary, incidental storage is defined by statute

13   as "electronic storage" (18 U.S.C. § 2510 (15)). A service provider that is available to the

14   public and provides storage facilities after an electronic communication has been transmitted

15   and opened by the recipient, or provides other long-term storage services to the public for

16   electronic data and files, is defined by statute as providing a "remote computing service" (18

17   U.S.C. § 2711(2)).

18   b. **Internet Protocol Address (IP Address)**: Every computer or device on the Internet is

19   referenced by a unique Internet Protocol (IP) address the same way every telephone has a

20   unique telephone number. An IP address is a series of four numbers separated by a period.

21   Each number is a whole number between 0 and 254. An example of an IP address is

22   192.168.10.102. Each time an individual has accessed the Internet, the computer from which

23   that individual initiated access is assigned an IP address. A central authority provides each

24   ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most

25   ISP's employ dynamic IP addressing, that is they allocate any unused IP addresses at the time

26   of initiation of an Internet session each time a customer or subscriber has accessed the

27   Internet. A dynamic IP address is reserved by an ISP to be shared among a group of

28   computers over a period of time. The ISP logs the date, time, and duration of the Internet

6

session for each IP address and can identify the user of that IP address for such a session from these records. On the other hand, some ISPs, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

c. **Log file**: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a Web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

d. **Trace Route**: A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

e. **Uploading**: Uploading is transmission of a file from one computer to another computer. From an Internet user's point-of-view, uploading is sending a file to a computer that is set up to receive it.

f. **Downloading**: Downloading is the transmission in the other direction: from one computer system to another. From the Internet user's point-of-view, to download a file is to request it from another computer (or from a Web page on another computer) and to receive it.

g. **Hash values/hashing**: A hash function or hash algorithm is a function for summarizing or assigning a value for identifying data. Such a summary is known as a hash value or simply a

7

hash and the process of computing such a value is known as hashing. A hash value can then act as a signature for the original data, without revealing its contents.

      i. Every image, photograph, document or movie found on a computer can be run through a hashing process that will calculate the unique hash value for that file. A hash value is a set of numbers and letters strung together and, once assigned, this hash value cannot be altered. If the same image is hashed twice, the hash value will remain consistent; however, if even 1 pixel of an image is altered that new image will generate a new hash value.

      ii. A hash value is a mathematical fingerprint of a digital photograph or movie, and is most often used by file-sharing networks such as eMule to help identify and authenticate specific photographs or movies.

      iii. There are several types of popular hash functions, including MD5 and SHA-1, but each operate in basically the same way, with the SHA-1 hash function assigning a hash value that is typically longer than that used by the MD5 hash function. The eMule network uses the MD4 hash function.

h. **Peer-to-Peer (P2P)**: P2P file sharing programs are a standard way of transferring files from one computer system to another while connected to the Internet. Peer-to-Peer file sharing programs allow groups of computers using the same file sharing network, e.g. "eMule" to connect directly with each other and to share files from one another's computer systems.

i. **Peer-to-Peer Hash Database**: A database of hash values calculated from known Child Pornography images and videos. This database is housed in Florida, USA. This database has been in existence since 2004. Officers that are trained in child exploitation investigations contribute to the contents of the database. The database is regularly audited to maintain its integrity and conforms to the federal definition of child pornography.

## COMPUTERS AND CHILD PORNOGRAPHY

    15.    Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with

8

whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

16. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

17. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there

9

1 is an added benefit to the pornographer in that this method of production does not leave as large a trail
2 for law enforcement to follow.

3    18.    The Internet allows users, while still maintaining anonymity, to easily locate (i) other
4 individuals with similar interests in child pornography; and (ii) web sites that offer images of child
5 pornography. Child pornography collectors can use standard Internet connections, such as those
6 provided by businesses, universities, and government agencies, to communicate with each other and to
7 distribute child pornography. These communication links allow contacts around the world as easily as
8 calling next door. Additionally, these communications can be quick, relatively secure, and as
9 anonymous as desired. All of these advantages, which promote anonymity for both the distributor and
10 recipient, are well known and are the foundation of transactions between child pornography collectors
11 over the Internet. Sometimes the only way to identify both parties and verify the transportation of child
12 pornography over the Internet is to examine the recipient's computer, including the Internet history and
13 cache to look for "footprints" of the web sites and images accessed by the recipient.

14    19.    The computer's capability to store images in digital form makes it an ideal repository for
15 child pornography. The size of the electronic storage media (commonly referred to as a hard drive) used
16 in home computers has grown tremendously within the last several years. Hard drives with the capacity
17 of 1000 gigabytes are not uncommon. These drives can store thousands of images at very high
18 resolution. Magnetic storage located in host computers adds another dimension to the equation. It is
19 possible to use a video camera to capture an image, process that image in a computer with a video
20 capture board, and save that image to storage in another country. Once this is done, there is no readily
21 apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic
22 storage devices is it possible to recreate the evidence trail.

23                              **THE eMULE NETWORK**

24    20.    I know from my training and experience that peer-to-peer (P2P) networks are frequently
25 used in the trading of child pornography. I know that one network, known as the eMule network, is
26 being used to trade digital files, including still image and movie files, of child pornography. Based on
27 my training and experience, I know the following about the operation of the eMule file-sharing network:
28

10

21. The eMule network can be accessed by computers running many different client programs, some of which include Limewire, Shareaza, and Bearshare to name a few. These programs share common protocols for network access and file sharing. The user interface, features and configuration may vary between clients and versions of the same client.

22. During the installation of a eMule client, various settings are established which configure the computer to share files. Depending upon the eMule client used, a user may have the ability to reconfigure some of those settings during installation or after the installation has been completed.

23. Typically, a setting establishes the location of one or more directories or folders whose contents (files) are made available to other eMule users to download. This location is commonly referred to as the "Shared Folder."

24. Files located in a user's shared directory are processed by the client software. As part of this processing, an MD4 hash value is computed for each file in the user's shared directory.

25. A "digital file" processed by this MD4 operation results in the creation of an associated hash value often referred to as a digital signature. One can conclude with certainty which greatly exceeds 99.99 percent that two or more files with the same MD4 digital signatures are identical copies of the same file regardless of their file name.

26. The eMule network uses MD4 values to improve network efficiency. Users may receive a selected file from numerous sources by accepting segments of the file from multiple users and then reassembling the complete file on the local computer. The client program succeeds in reassembling the file from different sources only if all the segments came from exact copies of the same file. The network uses MD4 values to ensure exact copies of the same file are used during this process.

27. The client programs, when installed and running, allows the user to search for pictures, movies and other files by entering descriptive text as search terms.

28. Entering search terms returns a list of files and descriptive information including in some client software the associated MD4 digital signature. By using this procedure, a person is able to compare the MD4 signatures of files being shared by users in the network to the MD4 signatures of any file including those of movies or images of child pornography. Once a matching set of digital signatures is identified, a person using this publicly available software client is able to initiate a download of this

11

file through the eMule network. These results are presented to the user to allow that user to select a file to download and then to receive it from other users.

29. When a download of a file is initiated, the user is presented with a list of users (candidates) who broadcasted to the eMule network that they have the requested file available for others to download.

30. Obtaining files from the eMule network, as described herein, returns the candidate list, including IP addresses, which can be used to identify the location of computers. A review of the MD4 signatures allows an investigator to identify the files which are child pornography.

31. The Child Protection System (CPS) is a computer software program developed by Special Agent Flint Waters, Wyoming Division of Criminal Justice. CPS has several functions that assist in the regionalization and tracking of IP addresses. Utilizing several automated detection processes, CPS will identify and log huge quantities of worldwide IP addresses that are identified as participating in the possession and distribution of child pornography. Investigators can access the CPS system and perform a query identifying suspect IP addresses that are in their jurisdiction. CPS will also keep record of each time an IP address is identified as being a download candidate for suspected child pornography on the eMule network. CPS also keeps record of each time a user's GUID is identified as being a download candidate for suspected child pornography on the eMule network.

32. When an investigator queries activity within their jurisdiction, they are presented with a list of IP addresses generated by the CPS allowing them a starting point for a potential investigation of a computer which is likely to be within their jurisdiction.

33. This process allows investigators to identify computers, originating from an IP address likely to be in their jurisdiction containing eMule or compatible software and possessing suspected child pornography files.

34. Once a computer at a specific IP address is identified as being in possession of child pornography, investigators, using the CPS software, can generate a historical report showing the dates and times that a computer at that particular IP address was logged on the eMule network and the MD4 hash values of any suspected child pornography images or videos that was being shared by that computer. This function is known as the "IP History".

12

35.     When an IP is identified by the CPS system, typically the GUID associated to the eMule client operating on that computer is captured. An investigator, using the CPS software, can also generate a historical report showing the dates and times that a specific GUID was logged on the eMule network, the IP address used and the SHA1 hash values of any suspected child porn images or videos shared by that computer. This function is known as the "GUID History"

36.     Detective William Wiltse, Oregon Police Department, created an automated software application called Peer Spectre that searches the eMule network for files using known child pornography search terms. The software application identifies computers at IP addresses that have files in their shared folder whose hash values match the database of suspected child pornography hash values. The software reads these reported download candidates and logs the IP address, time, date, MD4 hash values and filenames for each individual computer in the same way every time. The information gathered by Peer Spectre is uploaded to the Child Protection System, allowing officers the ability to query that data at any time. Each file of suspected child pornography is documented and run through various other hashing algorithms (MD5, SHA-1, etc.).

37.     I know from my training and experience that an investigator can review these details and identify a pattern of activity that links a single IP address to specific files of child pornography with an extremely high degree of accuracy. Peer Spectre automates the search process but conducts and reports the search in the same manner that has previously been done by individual investigators. Peer Spectre does not report details that are not also discoverable by the general public using Internet available software.

## CONDUCT OF INDIVIDUALS INVOLVED IN CHILD PORNOGRAPHY

38.     Based upon my training and experience, and the training and experience of other law enforcement officers with whom I have spoken or whose reports I have read, as well as my conversations with suspects, I am aware that the following characteristics are generally found in varying combinations in people who produce, trade, distribute, or possess images of minors engaged in sexually explicit conduct:

39.     These people view children as sexual objects. They receive gratification from sexually explicit images of minors.

13

40.     These people collect sexually explicit images of minors, which they use for their own sexual gratification and fantasy.

41.     Some of these people do not dispose of sexually explicit images of minors because the images are treated as prized possessions. They store such images in many different formats including photos, printouts, magazines, videotapes, and many forms of digital media such as hard drives, diskettes, USB drives, video cassettes, and CD-ROMs or DVDs. They store such images in many different places including their home, their car, and other areas under their control.

42.     Those that do dispose of sexually explicit images of minors often do so in order to avoid detection. Peer to peer networks make child pornography readily available for download at any time. These people often download and delete the same set of illicit images or videos repeatedly rather than permanently storing them.

43.     These people use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests.

44.     These people go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords to access programs or control encryption written down either in the vicinity of their computer, or on their person, for instance, in their wallet or an address book.

45.     These people maintain images of minors with whom they have had sexual contact. If such a person takes a picture of a minor, depicting the minor in the nude, there is a high probability the minor was used to produce sexually explicit images.

## THE INVESTIGATION AND FACTS SUPPORTING PROBABLE CAUSE

46.     On October 15, 2018, I accessed the Child Protective System (CPS) for the purpose of investigating California computers in order to identify persons involved in the receipt and distribution of child pornography and sexual exploitation of children through the use of P2P file sharing over the Internet. The Internet is a means and facility of interstate and foreign commerce.

14

47.     At this time I noted that IP address 73.170.194.164 was identified by the Child Protective System (CPS) automated software as a download candidate for suspected child pornography approximately 1588 times from July 4, 2018, and October 12, 2018.

48.     I also noted the filenames, reported by CPS, as displayed by the computer located at IP address 73.170.194.164. The following are some of the filenames reported by the software:

- little Thaiboys-bibcam_ 2009_ fucks cums_kdv _rbv. boys_ pedo_ best _very cute thai bois_pjk_p101_preteen.9548.avi

- K99 - Jonatan Cum Bj (Pthc Gay Pedo) Boy - 13Yo Jerks Off Then Sucks Cam Guy_ Facial - k99 - Jonatan.avi

- 12yr old boy fucking a 10yr old girl (3min 26secs).MPG

49.     I know that filenames do not always accurately depict the contents of the file so I compared the SHA1 hash values of the above files (as reported by CPS) with the same SHA1 hash values of known child pornography files recovered in previous investigations. These files had been downloaded, from previous investigations and are maintained for verification purposes. I queried the SHA1 hash values of the above files and found them to depict the listed conduct:

- SHA1 hash value TP4A7NZSCLXGUONNRQN7I6PIFU3T7BZC, shared by the suspect at the IP address 73.170.194.164 on October 12, 2018 at 0918 hours GMT.

  o  I viewed this file from a previous investigation and found it to be a color video which was 9 minutes in length. The video depicts two juvenile males engaged in oral copulation and anal sex with each other. The file is identified by name as "(b) little Thaiboys-bibcam_ 2009_ fucks cums_kdv _rbv. boys_ pedo_ best _very cute thai bois_pjk_p101_preteen.9548.avi"

- SHA1 hash value TWB22KC5CDI54LTSFHNCBWXEHQRZCDHF, shared by the suspect at the IP address 73.170.194.164 on October 7, 2018 at 0724 hours GMT

  o  I viewed this file from a previous investigation and found it to be a color video which was 19 minutes and 52 seconds in length. This video depicts a juvenile male masturbating and inserting a foreign object into his own anus. The boy then orally copulates an adult male. The file is identified by name as "K99 - Jonatan

15

1
2

Cum Bj (Pthc Gay Pedo) Boy - 13Yo Jerks Off Then Sucks Cam Guy_ Facial -
k99 - Jonatan.avi"

3
4

- SHA1 hash value F3XAZD5UJ7TL2KCQSGOH3RRGHLZ42ZBSshared by the suspect
at the IP address 73.170.194.164 on October 7, 2018 at 0427 hours GMT.

5
6
7
8

o I viewed this file from a previous investigation and found it to be a color video
which was 3 minutes and 26 seconds in length. The video depicts a juvenile male
engaged in vaginal sex with a juvenile female. The file is identified by name as
"12yr old boy fucking a 10yr old girl (3min 26secs).MPG"

9    50.    I used the internet IP trace program http://www.centralops.net and I was able to
10 determine Comcast Cable Communications (Comcast) issued the IP address 73.170.194.164 to the
11 subscriber. The address further resolved to an unknown user in Solano County. I have used the internet
12 IP trace program http://www.centralops.net for this purpose multiple times for approximately 50 prior
13 investigations.

14    51.    Centralops.net utilizes ARIN's Whois a query and response protocol that is used for
15 querying databases that store registered users or assignees of an Internet resource, such as IP addresses
16 or domain names.

17    52.    ARIN's Whois service is a public resource that allows a user to retrieve information
18 about IP number resources, organizations, and Points of Contact (POCs) registered with ARIN. It pulls
19 this information directly from ARIN's database, which contains IPv4 and IPv6 addresses, Autonomous
20 System Numbers (ASNs), organizations, customer reassignments, and related POCs.

21    53.    Based on my training and experience, and based on the foregoing, I believe that a
22 violation of18 U.S.C. § 2252(a)(2) occurred. The SHA1 has values associated with the files
23 downloaded by the suspect IP address 73.170.194.164 were confirmed as child pornography by my
24 observation. The file names also contain common child pornography terms such as "pthc," and refers to
25 the victims ages, "13Yo and 10 yr old."

26    54.    On October 18, 2018, I sent a preservation request to Comcast requesting the records
27 related to the suspect IP address on the date of October 7, 2018 and October 12, 2018 at the times of the
28 above downloads be preserved.

16

1    55.    On October 19, 2018, I authored Solano County Search Warrant 68-1018 for the

2    subscriber information related to the IP address of 73.170.194.164 which was signed by the Honorable

3    Judge Donna Stashyn, Solano Superior Court Judge. I served this search warrant to Comcast Cable

4    Communications via their online law enforcement portal.

5    56.    On October 24, 2018, I received an email from Comcast stating a response had been

6    posted to their law enforcement portal. This response identified the following subscriber for the IP

7    address 73.170.194.164 at the noted time of the above downloads:

8    Cintia Ochoa

9    164 Coloma Way

10   Vallejo, CA 94589

11   57.    On November 26, 2018, I obtained a search warrant for 164 Coloma Way Vallejo, CA,

12   signed by the Honorable Judge Wendy Getty, and I along with other officers executed it.

13   58.    During the execution of the warrant, ten residents were identified:

14
**MAJID, TARIQ** (Not present at the time of service)
15   MELGOZA, YOHAN
     OCHOA, JOSE
16   [Redacted Minor Name]
     MUERA, GUADALUPE
17   LOPEZ, MICALALA
     AMERICANO, MARIANA
18   SIERRA, WALTER
     NAVARRO, JOSE CARLOS
19   NAVARRO, ALEJANDRO

20

21   59.    Several of the residents were interviewed, but Majid was not present at that time.

22   Through subsequent interviews, I learned that Guadalupe Muera rented out the rooms to people,

23   including her son Jose Ochoa and his family. According to Ochoa, he had given the Wi-Fi password to

24   MAJID and Yohan Melgoza. Ochoa stated MAJID often had children come to the house to play video

25   games in his room. Jose Ochoa told MAJID multiple times not to bring children in the house but

26   MAJID continued to do so. He stated he had seen a laptop in MAJIDs room.

27   60.    While conducting the search, CHP Investigator Andrade performed a live preview of an

28   Alienware laptop located in MAJID's room, using a forensically sound program. Investigator Andrade

17

1  navigated to the file path: ThisPC\Downloads\eMule\Incoming and noted it contained 60 files.
2  Investigator Andrade was able to see approximately 20 files which were all videos. These video files all
3  had file names consistent with child pornography terms such as pthc [pre-teen hard core], 10yo and
4  12yo. Investigator Andrade viewed the file's thumbnail picture (which is a single frame of the video)
5  and identified 11 of these thumbnails as child pornography.

6      61.     Investigator Cates also located a photograph of a man with three young boys in Majid's
7  room. I brought Jose Ochoa into the room, pointed to the picture and asked who the man was. Jose
8  Ochoa stated this was MAJID.

9      62.     After further investigation confirming MAJID's identity, he was located and placed in
10  custody based on the child pornography found on the computer in the room he was renting.

11      63.     Investigators began processing the evidence taken from MAJID's room at the CCIU and
12  they located multiple files that they identified as child pornography across several of the Subject
13  Devices. They further located several picture and video series depicting the sexual assault of at least one
14  child on a bed closely resembling MAJID's.

15      64.     Following MAJID's arrest, he was taken into custody and interviewed at a Solano County
16  Sheriff's facility. Following an advisement of his Miranda rights, MAJID related the following, in
17  summary:

18      a.  MAJID's had been renting a room at 164 Coloma Way Vallejo, CA for approximately six
19          months. He has his own room and spends most of his time at work. He stated he had been
20          sexually molested as a child and was still trying to deal with the pain and trauma.

21      b.  MAJID's was shown several photographs of his room and bed taken during the search
22          warrant service that morning. MAJID's identified them as belonging to him. He was shown
23          the first photograph from a series found on his devices which depicted a young boy who
24          appeared to be unconscious on a bed similar in size, form and bedsheets to MAJID's bed.
25          MAJID's admitted the bedsheets were his, that he had taken this series of photographs and
26          admitted he had exposed the boy's genitalia and photographed him. MAJID's identified this
27          boy to Investigator Cates and me. The boy will be referred to as John Doe 1.

28

18

c. Investigator Cates showed MAJID's a second photograph which was also the first in a series that depicted the sexual assault of another young boy. The bedding in this series was also consistent with the blankets and sheets seen on MAJID's bed. MAJID identified this child by first name only and he will be referred to as John Doe 2. MAJID made admissions to taking these photographs and a video and of fondling the boy's genitalia. [John Doe 2 is currently about 20 years old, but had met MAJID when he was a minor. The video appears to depict John Doe 2 when he was a minor.]

d. MAJID told Investigator Cates we would locate four or five other such victims, who he had photographed in a similar manner, and stored the images in the Subject Devices

e. Later, Investigator Cates identified John Doe 1 as being 9 years of age at the time the exploitative photographs had been taken. When John Doe 1 was later located, it was learned that he is currently 16 years old. Thus, the series of images taken of him occurred in or about 2011. MAJID indicated in the interview that he had lived in Vallejo during this time.

65. Approximately 150 images and videos were discovered during the search of the Subject Devices which depicted the sexual assault of John Doe 1 and John Doe 2. Below are details of two of these images/videos:

a. John Doe 1: I noted the file DSCF2239.JPG while searching Item 1 (A Toshiba Hard Disk Drive). This image file is the ninth in a series which depict John Doe 1 asleep in a supine position on bed sheets which closely resemble MAJID's bedding. This image depicts John Doe 1's pants and underwear pulled aside so that his genitalia are exposed while a black adult hand manipulates his penis. John Doe 1 appears to be prepubescent in this image based on his physical attributes. According to this file's EXIF data (information stored within the file) the image was taken on January 4, 2011 by a FUJIFILM FinePix JX310 digital camera. According to John Doe 1's date of birth he would have been 9 years old if this time is correct. Based on my training and experience I know that FUJIFILM cameras are manufactured outside of the United States.

b. John Doe 2: I noted the file "HBO.AVI" while searching Item 4 (A Hitachi Portable Hard Disk Drive). The file is a color video, one minute and twenty-seven seconds in length. This

19

1    video file depicts John Doe 2 laying, shirtless in a supine position on bed sheets which

2    closely resemble MAJID's bedding. His shorts and underwear are pulled aside so that his

3    genitalia are exposed and a black adult hand masturbates John Doe 2's penis. John Doe 2

4    appears asleep throughout the video. Based on the video's metadata, it was taken on

5    September 2nd, 2012 using the same FUJIFILM FinePix JX310 digital camera. Based on

6    John Doe 2's date of birth, he would have been fourteen years old if this time is correct.

7    66.    MAJID was ultimately arrested on state charges of Possession of Child Pornography,

8    California Penal Code 311.11(a); Possessing over 600 images of Child Pornography, California Penal

9    Code 311.11(c)(1); and Production of Child Pornography, California Penal Code 311.1(a).

10   67.    Following the interview, I loaded the image of the operating system drive taken from

11   MAJID's laptop into EnCase V.8.07.00.93 and exported the NTUSER.DAT file associated with the user

12   profile "tariq." (Investigator's Note: The NTUSER.DAT file contains information associated with a

13   particular user's profile on a windows computer. This can include the most recently used and/or

14   accessed files and information related to attached devices.).

15   68.    I exported the NTUSER.DAT file and used RegRipper 2.8 to decode the data. I noted the

16   some of the following under the "Recent Docs:"

```
recentdocs v.20100405
(NTUSER.DAT) Gets contents of user's RecentDocs key
RecentDocs
**All values printed in MRUList\MRUListEx order.
Software\Microsoft\Windows\CurrentVersion\Explorer\RecentDocs
LastWrite Time Tue Nov 27 17:12:47 2018 (UTC)
86 = Alienware RAM Capture 0911 hrs
114 = Alienware.dmp
92 = F:\
144 = IEFTriageAndStandard (F:)
69 = System and Security
147 = ::{BB06C0E4-D293-4F75-8A90-CB05B6477EEE}
80 = Temp
7 = [pthc_preview.mp4
3 = lh
. . . .
85 = pthc 2017 asian boy fucked by father and jerk of dick for cum(1).mp4
99 = inA©dit-slideshow-vidA©o jura little boylove preteen pedo nude gay boy 10yo -
24'33"-.mp4
53 = PTHC 2017 Marusa Awesome 10yo Red Hair Girl 04.mkv
96 = New 2018 Vicky Collection babyboy4cumfun 12 yo boy Pedoman nude children
pedo NABULT 14yo.mpg
50 = New Olaf Framke Collection 2006 - Zoophilia Part 7 - Pedo Underage Children
Animals Rape Bdsm Scat Snuff Bizarre Pthc Kiddy Boy Gay Torture Sodomie.rm
```

69. The above shows multiple, recently accessed, files containing terms consistent with child pornography.

70. To date, forensic experts have located approximately 500 video files and at least 10,000 image files depicting child pornography across the Subject Devices.

71. On or about November 29, 2018, John Doe 1 was located. He is currently 16 years old. John Doe 1's mother was present and identified MAJID in a photograph, claiming he was her son's "mentor." John Doe 1 identified himself in a photograph located during the search. He identified the bed sheets as MAJID's and further related that the hand in the photograph pulling his shorts to the side appeared to be MAJID's. John Doe 1 became very emotional at this point.

72. Investigators identified approximately 51 photographs in the series depicting the sexual assault of John Doe 1 who was determined to be 9 years old at the time of the assault.

21

1

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

2  73.  Based on my knowledge, training, and experience, I know that electronic devices can
3  store information for long periods of time. Similarly, things that have been viewed via the Internet are
4  typically stored for some period of time on the device. This information can sometimes be recovered
5  with forensics tools.

6  74.  There is probable cause to believe that things that were once stored on several of the
7  Subject Devices may still be stored there, for at least the following reasons:

8  a.  Based on my knowledge, training, and experience, I know that computer files or remnants of
9  such files can be recovered months or even years after they have been downloaded onto a
10  storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage
11  medium can be stored for years at little or no cost. Even when files have been deleted, they
12  can be recovered months or years later using forensic tools. This is so because when a
13  person "deletes" a file on a computer, the data contained in the file does not actually
14  disappear; rather, that data remains on the storage medium until it is overwritten by new data.

15  b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-
16  that is, in space on the storage medium that is not currently being used by an active file-for
17  long periods of time before they are overwritten. In addition, a computer's operating system
18  may also keep a record of deleted data in a "swap" or "recovery" file.

19  c.  Wholly apart from user-generated files, computer storage media-in particular, computers'
20  internal hard drives-contain electronic evidence of how a computer has been used, what it has
21  been used for, and who has used it. To give a few examples, this forensic evidence can take
22  the form of operating system configurations, artifacts from operating system or application
23  operation, file system data structures, and virtual memory "swap" or paging files. Computer
24  users typically do not erase or delete this evidence, because special software is typically
25  required for that task. However, it is technically possible to delete this information.

26  d.  Similarly, files that have been viewed via the Internet are sometimes automatically
27  downloaded into a temporary Internet directory or "cache.

28

22

1        75.    **Forensic evidence**. As further described in Attachment B, this application seeks

2 permission to locate not only electronically stored information that might serve as direct evidence of the

3 crimes described on the warrant, but also forensic evidence that establishes how the Device was used,

4 the purpose of its use, who used it, and when. There is probable cause to believe that this forensic

5 electronic evidence might be on the Device because:

6      a.  Data on the storage medium can provide evidence of a file that was once on the storage

7         medium but has since been deleted or edited, or of a deleted portion of a file (such as a

8         paragraph that has been deleted from a word processing file). Virtual memory paging

9         systems can leave traces of information on the storage medium that show what tasks and

10        processes were recently active. Web browsers, e-mail programs, and chat programs store

11        configuration information on the storage medium that can reveal information such as online

12        nicknames and passwords. Operating systems can record additional information, such as the

13        attachment of peripherals, the attachment of USB flash storage devices or other external

14        storage media, and the times the computer was in use. Computer file systems can record

15        information about the dates files were created and the sequence in which they were created.

16      b.  Forensic evidence on a device can also indicate who has used or controlled the device. This

17        "user attribution" evidence is analogous to the search for "indicia of occupancy" while

18        executing a search warrant at a residence.

19      c.  A person with appropriate familiarity with how an electronic device works may, after

20        examining this forensic evidence in its proper context, be able to draw conclusions about

21        how electronic devices were used, the purpose of their use, who used them, and when.

22      d.  The process of identifying the exact electronically stored information on a storage medium

23        that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence

24        is not always data that can be merely reviewed by a review team and passed along to

25        investigators. Whether data stored on a computer is evidence may depend on other

26        information stored on the computer and the application of knowledge about how a computer

27        behaves. Therefore, contextual information necessary to understand other evidence also falls

28        within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

76. I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

77. **Nature of examination**. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

78. **Manner of execution**. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

///

///

///

///

///

24

1

## CONCLUSION

2

79.     For the reasons identified above, I respectfully request the issuance of a search warrant

3

for the Subject Devices, which are described and depicted in Attachment A, authorizing any agent or

4

task force officer of the FBI, with the assistance of other law enforcement officers, to search the device

5

for items more particularly described in Attachment B, all of which are evidence, instrumentalities and

6

fruits of violations of Title 18, United States Code, Sections 2252(a), Receipt/Distribution of Child

7

Pornography, and § 2251(a), Sexual Exploitation of Children.

8

I declare under penalty of perjury that the foregoing is true and correct to the best of my

9

knowledge and belief.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Richard Washabaugh
Task Force Officer
Federal Bureau of Investigations

Sworn to and subscribed before
me this ___Y___ day of February, 2019.

THE HONORABLE ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

APPROVED AS TO FORM BY:

MICHELE BECKWITH
ASSISTANT U.S. ATTORNEY

25

1

**ATTACHMENT A**

2  This search warrant authorizes a search and the forensic examination of the following Subject Devices

3  for the purpose of identifying information described in Attachment B.

4

    **Item 1** – Toshiba hard drive, S/N: 943BTNQPTYP3
5    **Item 2** – Miscellaneous CD/DVDs located in case in cardboard box by the closet
    **Item 3** – Western Digital Easy Store, S/N: WX41D370L4TH
6    **Item 4** – Hitachi hard drive, S/N: 1MG64LGD
    **Item 5** – Western Digital My Passport hard drive, S/N: WXE1A1706YKU
7    **Item 6** – Emachine desktop computer, S/N: PTND5P2002220024773000
    **Item 7** – Alienware Laptop computer
8    **Item 8** – Gray USB drive, PNY brand
    **Item 9** – Gray USB drive, SanDisk Cruzer mini
9    **Item 10** – Gray USB drive, unknown make
    **Item 11** – Blue USB drive, unknown make
10    **Item 12** – Black and red USB drive, Cruzer edge
    **Item 13** – Black and white USB drive, SanDisk Cruzer
11    **Item 25** - A FUJIFILM Finepix JX310 digital camera with no battery or storage
    **Item 26** - A silver USB drive with "Ecolab water softening 2007" which was plugged in to
12    a digital photo viewer
    **Item 29** - A Sony floppy disk
13    **Item 30** - A Panasonic Compact Video Cassette

14

15  These items are currently being stored in evidence at the CCIU office, 4949 Broadway Suite F104

16  Sacramento, CA 95820.

17

18

19

20

21

22

23

24

25

26

27

28

26

**ATTACHMENT B**

1.      The entirety of the digital contents of the items identified in Attachment A, and any items contained therein that relate to, or which appear to be fruits, instrumentalities or evidence of, violations of 18 U.S.C. § 2252(a) and § 2251(a), including but not limited to, images, videos, documents or log files.

2.      Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Any and all computer data which would tend to identify the individual(s) responsible for downloading and/or viewing the above-described child exploitative material. This includes, but is not limited to, user profile data, email and messaging account names, notes, and other documents which contain identifying information as well as the means used to download, view and store child exploitative material.

4.      Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation or data, consisting of hardware, software or other programming code. Data security hardware may include encryption devices, chips and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt; compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

5.      Any information that may lead to the identity and age of the children depicted in the images seized pursuant to this warrant.

6.      Records evidencing the use of the Internet Protocol address identified in the Affidavit to communicate with any other computers or Peer-to-Peer users or devices, including:

      a.   records of Internet Protocol addresses used;

      b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

7.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

27

Case 2:19-sw-00164-AC   Document 1   Filed 03/04/19   Page 29 of 30

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of                    )
                                                   )
SUBJECT DEVICES identified in Attachment A to the  )    Case No.
Supporting Affidavit in Support of this Warrant    )    **2: 1 9 - SW - 0 1 6 4**    **AC**
                                                   )
                                                   )

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the          Eastern          District of                California
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

        **YOU ARE COMMANDED** to execute this warrant on or before          3 / i 8/ 19          *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern
District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     3/4 / 19   11:00 a.m.          *Judge's signature*

City and state:     Sacramento, California          Allison Claire, U.S. Magistrate Judge
                                                     *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____                    _____
Signature of Judge                                                        Date